# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEGAMEN MOVING & STORAGE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MEGA MAN MOVING LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## VERIFIED COMPLAINT AND JURY DEMAND

Megamen Moving & Storage, LLC ("Megamen") brings this action against Mega Man Moving LLC ("Mega Man") for trademark infringement, violations of the consumer protection statute, and declaratory relief, based on Mega Man's use of Megamen's trademarked business name and resulting harm, including irreparable injury, that Megamen has suffered as a result of Mega Man's infringement.

## PARTIES

1.      Megamen Moving & Storage, LLC is a Massachusetts limited liability corporation with a principal place of business located at 21 Olympia Avenue, Woburn, Middlesex County, Massachusetts.

2.      Mega Man Moving LLC is a Florida limited liability corporation with a business address of 500 Fairway Drive, Deerfield Dr, Florida and a mailing address of 187 SW 7th Street, Pompano Beach, Florida.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over these claims because there is a federal question where Megamen has brough trademark claims under 15 U.S.C. § 1125(a).

4.      This Court has jurisdiction over Mega Man pursuant to Mass. Gen. Laws ch. 223A, § 3(a), (c), (d) because Mega Man transacted business in Massachusetts, caused Megamen injury while transacting business in Massachusetts, and caused Megamen injury in Massachusetts while acting to solicit customers nationwide, including in Massachusetts.

5.      Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because a substantial part of the events or omissions giving rise to Megamen's claims occurred in this judicial district, both because Mega Man transacted business within this judicial district and because Mega Man harmed Megamen within this judicial district.

**FACTS**

I.      **Megamen Develops a Strong Business, and a Strong Mark**

6.      Megamen is in the business of residential and commercial moving and storage. Megamen is based in Massachusetts, but its interstate operations are growing. Indeed, the Federal Motor Carrier Safety Administration has authorized Megamen to perform interstate moves within the continental United States.

7.      Megamen was first incorporated in 2014 by president Matthew Analetto ("Mr. Analetto"), who has spent the last nine years building his business's reputation and good will. Mr. Analetto's careful stewardship of the business has led to Megamen enjoying a sterling reputation.

8.      Megamen prides itself of providing excellent customer service and careful, detail-oriented moving services. Megamen's commitment to its customers is reflected in its online reviews, which are overwhelmingly positive. Megamen has 4.9 out of 5 stars on Yelp

and 4.8 stars out of 5 on Google reviews. Customer feedback includes statements such as "Best experience I've ever had with movers[;]" "Great Owner with an efficient and effective supporting staff. Guys work their tails off and keep your things scratch free!![;]" and "Came in under estimate. Hire them, you will be glad you did. I give them 10 out of 5 stars."

9.      In the moving industry, companies rely on their online presence and customer feedback in order to gain and retain customers. Unlike retail, restaurants, and other brick and mortar industries, consumers do not physically visit the moving company that they choose. They instead rely on search engines to direct them to moving companies that fit their criteria. As a result, a company's reputation, including online reviews and ratings posted on websites such as Yelp and Google Reviews, is of paramount importance to gaining and maintaining business. Indeed, many customers search for a moving company by reviewing online reviews of various moving companies.

10.      In order to protect its business and good will, Megamen applied for a trademark for the name "Megamen Moving & Storage" (the "Mark") on January 12, 2021. Megamen received its trademark, registration number 6561026, on November 16, 2021. A copy of Megamen's trademark report is attached at **Exhibit A**. As the trademark report reflects, Megamen has used the Mark since June 1, 2014.

## II.      **Megamen Learns that Mega Man Is Causing Confusion between the Businesses, Resulting in Harm to Megamen's Reputation and Business.**

11.      In 2023, Mr. Analetto learned that Mega Man was operating a moving brokerage out of Florida. While Mega Man's website states that it has "More than 40 years of experience in the field[,]" in fact, Mega Man was registered as a Florida corporation on February 1, 2023. A copy of Mega Man's business profile is attached at **Exhibit B**.

12.     Mega Man specifically targets Massachusetts residents as potential customers, including through its website:



**Massachusetts Long–Distance Moves with Mega Man Moving**

In the Bay State of Massachusetts, Mega Man Moving is celebrated for its unmatched long-distance relocations. Whether it's a brownstone in Boston, a cottage in Cape Cod, or a family home in Worcester, Massachusettans trust our expertise for out-of-state transitions. Thinking of relocating from the historic streets to the sunny coasts of California or the snowy terrains of Minnesota? Our adept team ensures your Massachusetts move is smooth and hassle-free. Dive into the testimonials from our content Massachusetts community and swiftly ascertain your moving costs via our user-friendly app.

13.     Mr. Analetto learned of Mega Man after receiving negative online reviews and complaints about Megamen from angry customers (to whom Megamen had never provided any service at all) who accused Megamen of, among other things, taking deposits but not providing services, charging customers too much for their moves, and otherwise providing poor service.

14.     Megamen had never provided any services to the people who were complaining publicly about poor service.

15.     Indeed, the majority of the customers who posted negative reviews had sought, and in many cases received, moving services outside the New England area.

16.     For example, on October 4, 2023, a Yelp user from Tennessee identified as "clyde j." posted a one-star review a review to Megamen's Yelp page, writing:



The Phone office was polite, but the service was terrible. The truckers demanded all payment upfront and then stated that would be twice as expensive. Despite the fact they had photos, and AND had already seen them. They also asked for a tip upfront, and could not give me an estimated delivery date despite the fact it was guaranteed to be 3 to 5 days later.

This customer was not a Megamen customer, and, on information and belief, had obtained moving services from Mega Man.

17.     A one-star review posted on Megamen's Google reviews page in or around November 2023, by a user identified as Tammy Hoffman, stated:



Again, Megamen did not perform any job for a customer named Tammy Hoffman (or Judy

Capell, who also signed the review) and did not perform a moving job from Florida to Arizona.

18.     Worse, in the spring of 2023 Megamen learned that Mega Man had agreed to perform a move for a Massachusetts resident who believed that they had contacted Megamen, accepted the customer's deposit for the move, then did not arrive to provide moving services. The customer contacted Megamen to complain and receive a reimbursement of his deposit. Megamen thus learned that not only had Mega Man accepted the customer's deposit, but in fact had told the customer that it was affiliated with Megamen. Upon information and belief, Mega Man has never reimbursed this customer for their deposit. A true and correct copy of a text message from the father of the daughter who was scammed by Mega Man is attached here as **Exhibit <u>C</u>**.

19.     Megamen further received hundreds of solicitations from all over the country, although Megamen does business predominantly in Massachusetts. In other words, hundreds of individuals thought that Megamen in Massachusetts was Mega Man in Florida, which advertises itself as providing moving services nationwide. Examples of requests for estimates submitted through Megamen's website for moves outside of Massachusetts are attached here as **Exhibit <u>D</u>**.

20.     On at least one occasion, a law firm representing a Mega Man customer confused Megamen with Mega Man. Following the apparent failure of Mega Man to deliver a customer's belonging, a Florida law firm wrote a demand to Megamen stating that the customer "has not received her belongings" and making a demand for records. A copy of that demand letter is attached here as **Exhibit <u>E</u>**. Megamen never had any connection with the customer whom the law firm identified in the demand.

21.     Upon information and belief, Mega Man is intentionally using a name and marketing materials similar to Megamen in order to benefit from Megamen's good reputation.

22.     Google searches for Megamen return results for Mega Man if a potential user makes an error of just one letter, namely keying the letter "a" instead of "e." Such a simple error thus returns Mega Man's poor reviews and other information to potential customers of Megamen.

23.     Mega Man has compounded this simple error by cybersquatting on megamanmoving.com, which is registered on April 13, 2023. Megamen's website is megamenmoving.com, which was registered years earlier on August 5, 2014. Thus, a simple user error results in a potential customer going to Mega Man's website instead of Megamen's website.

24.     Mega Man's website features a Massachusetts page targeted at selling moving services in Massachusetts.

25.     Not only are the website addresses almost identical, but Mega Man's logo bears a striking a resemblance to Megamen's much older logo, both depicting a rectangular design with the company's name and a depiction of a man moving boxes to the side of the logo. Each website incorporates the logo in the upper, left side of the screen.

26.     For comparison, the following is Megamen's logo:



And the following is Mega Man's logo:



**III.**    **Megamen Attempts to Resolve the Issue of Trademark Confusion Without Litigation.**

27.    In late 2023, Mr. Analetto called Mega Man to discuss his concerns about Mega Man's use of the Megamen mark.

28.    Mr. Analetto asked the Mega Man employee who answered the phone whether Mega Man was affiliated with Megamen in Massachusetts.

29.    The employee said that Mega Man in Florida was affiliated with Megamen in Massachusetts.

30.     Mr. Analetto then stated that Mega Man was not affiliated with Megamen and that he was the owner of Megamen. The employee then hung up the phone without responding further.

31.    Later, Mega Man's owner called Mr. Analetto. The owner, who identified himself as "Tony Valentine," agreed to speak with Mr. Analetto. Upon information and belief, "Tony Valentine" is Mega Man manager Anthony Coviello.

32.    Mr. Analetto voiced his significant concerns regarding customer confusion between the two companies and requested that Mega Man stop using the name Mega Man, as it was causing significant confusion with his trademarked name, and damage to Megamen's reputation and business.

33.     Mr. Valentine refused to stop using the name Mega Man. He said that Mega Man had successfully grown its business in about the eight months since it had started using the name.

34.     Given the pervasive number of complaints Megamen received that were attributable to Mega Man's work, on September 7, 2023 Megamen again reached out to Mega Man, this time in a letter through Megamen's counsel, to explain that it had a trademark that protected its business name and demanding that  Mega Man  stop using its name for its moving brokerage firm. Mega Man did not respond to that letter.

## COUNT I

### Trademark Infringement and Unfair Competition, 15 U.S.C. §1114

35.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

36.     Plaintiff is the owner of the Megamen Mark.

37.     Defendant is not authorized to use the Megamen Mark.

38.     Defendant is using a name markedly similar to Megamen's name in commerce, and indeed which differs by just a single letter.

39.     Defendant is in the same business as Megamen.

40.     In early 2023, Defendant registered the domain www.megamanmoving.com, which leads to a website offering moving and storage services that the Mark protects. Consumers will, and already have, confused Mega Man moving with Megamen.

41.     Defendant has used and, upon information and belief, plans in the future to use the name Mega Man in connection with their moving business, despite not having any affiliation with Megamen and in fact being a competitor of Megamen.

42.     Defendant's conduct is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Mega Man with Megamen to the detriment of Megamen, in violation of 15 U.S.C. § 1114(1).

43.     Defendant's actions, as set forth above, are causing irreparable injury to Megamen, through diversion of its goodwill under the Megamen Mark to Mega Man, and by diminishing and destroying Megamen's good will and reputation, for which there is no adequate remedy at law.

44.     Unless enjoined by this Court, Defendant will continue to cause a likelihood of confusion and deception to the general public and Megamen's customers and irreparable injury to Megamen.

45.     This threat of future injury to Megamen's business identity, good will, and reputation requires injunctive relief to Prevent Defendant's continued use of the Megamen Mark and to ameliorate and mitigate Megamen's injuries.

46.     On information and belief, Defendant has derived unlawful gains and profits from their infringement of the Megamen Mark.

47.     Defendant's actions, as set forth above, constitute willful trademark infringement, which entitles Megamen to enhanced damages and remedies set forth in 15 U.S.C. §§ 1117 and 1118.

## COUNT II

### False Designation of Origin in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

48.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

49.     Defendant is using a name markedly similar to Megamen's name in commerce, and indeed which differs by just a single letter.

10

50.     Defendant is in the same business as Megamen.

51.     Defendant in early 2023, Defendant registered the domain

www.megamanmoving.com, which leads to a website offering moving and storage services that

the Mark protects. Consumers will, and already have, confused Mega Man moving with

Megamen.

52.     Defendant has used and, upon information and belief, plans in the future to use

the name Mega Man in connection with their moving business, despite not having any affiliation

with Megamen and in fact being a competitor of Megamen.

53.     Use of the name Mega Man in this manner constitutes a false designation of

origin that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection,

or association of Mega Man with Megamen to the detriment of Megamen, in violation of Section

43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).

54.     Megamen has not and does not authorize Defendant to use the name Mega Man.

55.     Defendant's conduct as described above has been willful, wanton, reckless, with

full knowledge, and in total disregard of Mega Man's lack of right to use this name.

56.     Defendants are causing irreparable injury to Megamen for which there is no

adequate remedy at law, and will continue to do so unless their use of the Mega Man name is

enjoined by this Court.

57.     By reason the foregoing, Megamen has been damaged and is entitled to injunctive

relief and damages in an amount to be proven at trial.

## COUNT III

**False Designation of Origin in Violation of the Lanham Act, 15 U.S.C. § 1125(d)**

58.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

59.     Plaintiff is owner of the registered trademark Megamen Moving & Storage®, Reg. No. 90,462,472.

60.     On information and belief, Mega Man registered megamanmoving.com on or about the registration of Mega Man in Florida on February 1, 2023. Mega Man registered with a bad faith intent to profit from trading on the Mark.

61.     Mega Man intended to divert consumers from Megamen's online location to their business.

62.     Mega Man caused and will likely continue to cause confusion as to the source, sponsorship, affiliation or endorsement of the Megamen.com web site.

## COUNT IV

### Trademark Infringement in Violation of M.G.L. c. 110H, § 12

63.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

64.     Defendant has used and, upon information and belief, plans in the future to use the Mega Man name in connection with its moving business, which does not have any affiliation with Megamen and which in fact is in competition with Megamen.

65.     Such use has and will continue to cause confusion or mistake or to deceive as to the source or origin of such sources.

66.     Defendant is not authorized to use the Mega Man name.

67.     Defendant's unauthorized use of the Mega Man name constitutes trademark infringement in violation of G.L. c. 100H, § 112.

68.     Defendant's unauthorized use of the Mega Man name is intended to cause confusion or mistake or to deceive.

69.     Defendant's unauthorized use of the Mega Man name has caused, and is likely to continue to cause, substantial and irreparable injury to Megamen, unless Defendant's use of the Mega Man name is enjoined by this Court.

70.     Defendant's conduct as described above has been willful, wanton, reckless, with full knowledge, and in violation of Megamen's rights.

71.     By reason of the foregoing, Megamen has been damaged and is entitled to injunctive relief and damages in an amount to be proven at trial.

<u>**COUNT V**</u>

**Trademark Dilution in Violation of M.G.L. c. 110H, § 13**

72.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

73.     Defendant's unauthorized use of the Mega Man name was intended to cause, has caused, and is likely to continue to cause dilution of the distinctive quality of the Megamen name.

74.     Such unauthorized use of the Mega Man name has caused, and is likely to continue to cause, substantial and irreparable injury to Megamen, unless Defendant's unauthorized use of the Mega Man name is enjoined by this Court.

75.     Defendant's conduct as described above has been willful, wanton, reckless, with full knowledge, and in violation of Megamen's rights.

76.     By reason of the foregoing, Megamen has been damaged and is entitled to injunctive relief and damages in an amount to be proven at trial.

## COUNT VI

### Unfair Competition in Violation of Massachusetts Common Law

77.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

78.     Megamen owns and enjoys common law rights in the Megamen name which are superior to any rights which Defendant may claim to that or any similar name.

79.     Defendant's unauthorized use of the Mega Man name in connection with its moving business, which does not have any affiliation with Megamen and which in fact competes with Megamen, is being, and has been committed in order to capitalize on and misappropriate Megamen's valuable goodwill in its name that it created through continuous usage of that name since 2014.

80.     Defendant's unauthorized use of the Mega Man name has and is likely to continue to cause confusion or mistake or deception of consumers as to the origin of such services.

81.     Defendant's acts and conduct as set forth herein constitute unfair competition in violation of Massachusetts common law.

82.     Defendant's wrongful unfairly competing activities are intended to cause, have caused, and unless enjoined by the Court, will continue to cause, irreparable injury and other damage to Megamen's business reputation and goodwill.

83.     Defendant's conduct as described above has been willful, wanton, reckless, with full knowledge, and in violation of Megamen's rights.

84.     By reason of the foregoing, Megamen has been damaged and is entitled to injunctive relief and damages in an amount to be proven at trial.

## COUNT VII

### Unfair and Deceptive Acts and Practices and
### Unfair Competition in Violation of G.L. c. 93A, §§ 2 and 11

85.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth

herein.

86.     The parties are engaged in trade or commerce within the meaning of G.L. c. 93A.

87.     Defendant has engaged in unfair and/or deceptive acts and practices and unfair

competition in violation of G.L. c. 93A, §§ 2 and 11.

88.     Defendant's actions in violation of G.L. c. 93A include but are not limited to: i)

using a name similar to Megamen's name in order to capitalize on Megamen's reputation and

good will; 2) affirmatively telling potential customers that it is affiliated with Megamen in

Massachusetts; and 3) taking a deposit from a Massachusetts customer who believed she was

hiring Megamen, failing to provide service to the customer, and retaining the customer's deposit.

89.     At all times material and relevant hereto, the events, transactions and occurrences

described herein occurred substantially within the Commonwealth of Massachusetts and harmed

Megamen in Massachusetts.

90.     By reason of the foregoing, Megamen has been damaged and is entitled to all

damages suffered as a result of Defendant's actions in violation of G.L. c. 93A, trebled, together

with costs, interest and attorneys' fees.

## COUNT VIII

### Declaratory Judgment—Use of Megamen Name (G.L. c. 231A)

91.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth

herein.

92.     There is an actual controversy between the parties regarding Mega Man's right to continue using the Mega Man name in connection with its moving business.

93.     The parties will benefit from resolution of this dispute.

94.     Megamen seeks a ruling that Mega Man has no right to continue using the name "Mega Man" and any other similar name to Megamen in relation to its moving business.

WHEREFORE, Plaintiff Megamen Moving & Storage, LLC prays that the Court:

A.   enter judgment in their favor and against Defendant on all Counts of the Complaint;

B.   enter the declaratory judgment requested in Count VIII of the Complaint;

C.   enter a temporary and permanent injunction ordering that defendant, its officers, agents, employees, successors, attorneys, and all those in active concert or participation with defendant shall not: (i) use in any manner any trademark, service mark, trade name, company name or assumed name which resembles, in whole or in part, the federal registration of plaintiff Megamen, as set forth in Exhibit A of the Complaint, or any other name or mark owned or used by the defendant so as to cause likelihood of confusion, mistake or deception with respect to origin, relationship, or affiliation by or with plaintiff; or (ii) use in any manner, including, without limitation, as part of a website domain name or in connection with any social media, any trademark, service mark, trade name or assumed named containing the term "Mega Man," "Megaman," "Megamen," or any other variation of those words.

D.   award damages, including interest, in an amount to be determined at trial;

E.   award multiple damages and attorneys' fees to Megamen;

F.   Award attorneys' fees and costs to Megamen; and

G.   grant Megamen such other and further relief as is just or appropriate.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all counts so triable.

Respectfully submitted,

MEGAMEN MOVING &
STORAGE, LLC

By their attorneys,

*/s/ Benjamin J. Wish*
Benjamin J. Wish (BBO# 672743)
*bwish@toddweld.com*
Maria T. Davis (BBO # 675447)
*mdavis@toddweld.com*
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777

Dated: January 30, 2024

17

## <u>VERIFICATION</u>

I, the undersigned, hereby verify that the foregoing recitation of facts, other than the allegations made on information and belief, are true based on my personal knowledge and on documents that I have reviewed for purposes of preparing this Verified Complaint and Jury Demand.

Signed under the penalties of perjury on this <u>30th</u> day of January, 2024.

Name: _Matthew Analetto_

Title: _Owner_